**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **ANTHONY DEROCK**, | Case No. 1:22-cv-01935 |
| Plaintiff, | **COMPLAINT** |
| | UNLAWFUL EMPLOYMENT ACTION |
| v. | Title VII Discrimination, Retaliation and supplemental state law claims |
| **CURRY COUNTY and COURT BOICE**, | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action to remedy violations of Plaintiff's statutory rights under Title I of the ADA, 42 U.S.C. § 12112, and FMLA, 29 U.S.C. § 2601 *et seq.*; as well as supplementary state claims for discrimination and retaliation based on Plaintiff's invocation of the provisions of the workers' compensation system, taking medical leave, having a disability,

his marital status, and whistleblowing. Plaintiff seeks compensatory damages as well as attorneys' fees and costs.

## JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3. Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4. All preconditions to jurisdiction pursuant to 42 U.S.C. § 2000e-5 have been satisfied.

    a. On February 14, 2022, Plaintiff filed a charge of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries (BOLI), case number DPEMDP220214-60167. BOLI co-filed a charge with the Equal Employment Opportunity Commission (EEOC), charge number 38D-2022-00255.

    b. On September 16, 2022, BOLI issued Plaintiff a right to sue letter.

    c. On September 20, 2022, the EEOC issued Plaintiff a right to sue letter.

5. On February 14, 2022, a tort claim notice was delivered to Curry County on behalf of Plaintiff Anthony DeRock.

6. Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

## PARTIES

7. Plaintiff, Anthony DeRock (Plaintiff or DeRock), is a former employee of defendant Curry County. Plaintiff worked for defendant in Curry County, Oregon.

8. Defendant Court Boice is a Commissioner of defendant Curry County.

PAGE 2 – COMPLAINT

9. At all times relevant, defendant's employees and supervisors as their conduct is alleged herein were acting within the course and scope of their employment with the defendant Curry County.

## GENERAL FACTUAL ALLEGATIONS

10. On May 7, 2020, DeRock began working as Parks Coordinator for Curry County. His job duties were to oversee and maintain all parks within the County parks system. His supervisor was Julie Schmelzer, Director of Operations. His salary was $51,768. The County Commissioners at the time were Court Boice, Susan Gold, and Christopher Paasch.

11. On August 18, 2020, DeRock reported his disability, asthma, to his direct supervisor Julie Schmelzer. At the time she afforded him a medical accommodation and forwarded that information to HR for inclusion in his personnel file.

12. On August 18, 2020, DeRock reported hostile work environment created by Commissioner Boice to Julie Schmelzer, Sue Gold, and Chris Paasch.

13. On September 9, 2020, Boice was replaced with Gold as the parks liaison at the request of outgoing Director of Operations Schmelzer after a request by DeRock.

14. On September 10, 2020, Boice made discriminatory and harassing comments regarding DeRock's medical accommodation. DeRock reported this to County Council John Huttl as well as Julie Schmelzer. Ms. Schmelzer confirmed DeRock's medical accommodation was approved and on record. County Council stated he would follow up with Boice.

15. In September 2020, Brad Rueckert became the interim Director of Operations. Curry County hired Director of Operations Brad Rueckert to move here from Utah, bring his family here, and to do the job of director of operations.

16. Since reporting the discriminatory and retaliatory behavior, DeRock was subjected to retaliation and continued harassment. Boice attempted to reassign DeRock to complete janitorial services for the county. The interim County Director, Brad Rueckert, correctly responded to Commissioner Boice it was an inappropriate use of a department head's time and is not at all the responsibility of DeRock's department or personal job description.

PAGE 3 – COMPLAINT

17. DeRock met with Commissioner Boice, tried to resolve things with him, and he kicked me out of his office.

18. On November 5, 2020, DeRock had an appointment with his doctor to discuss his ongoing medical issues. Upon returning to work DeRock sought out Mr. Rueckert to discuss the outcome of his medical appointment. Before DeRock could meet with Mr. Rueckert, Commissioner Boice sought him out and began accosting and harassing DeRock about his medical accommodations and restrictions. Boice did this to humiliate and demean DeRock in front of his coworkers. Boice demanded that DeRock provide him personally with medical documentation. He was aggressive, demeaning, humiliating, and specifically discriminating and retaliating against me. DeRock reported the discrimination and retaliation to Julie Schmelzer, Brad Rueckert, John Jezuit, Miranda Plagge, Sue Gold, Summer Matteson, and Chris Paasch.

19. Around November 8, 2020, DeRock submitted the following complaint to Curry County:

> My name is Anthony DeRock, I am employed by Curry County as the Parks Coordinator. I have been the subject of unrelenting harassment and discrimination from Commissioner Court Boice and have reported these interactions to my direct supervisor. I had previously disclosed a need for medical accommodation to my direct Supervisor, Julie Schmelzer. At the time I disclosed this need she provided me with a medical accommodation without requiring me to provide medical disclosure which was her right to do under ADA guidelines. This would have been the one opportunity for my Supervisor and her alone to request medical documentation which she chose not to do meaning no other person or entity had any right to demand production of such documentation, the law is very clear on this matter. Regardless of the accommodation being permitted and all parties involved including County Council and the Board of Commissioners being notified I have continued to be the subject of harassment and Discrimination.
>
> There has been an escalating pattern of harassment and discrimination against me based on my disability, this discrimination stems directly from my inclusion of a protected class (persons with disabilities). I am still being discriminated against and am now the victim of retaliation for reporting the harassment I have been exposed to. I have experienced mental suffering, emotional distress, lack of sleep, anxiety, inconvenience, embarrassment, humiliation and fear of continued retaliation, due to the unrelenting discrimination/harassment/retaliation of Commissioner Boice.

Thorough investigation should include documentation showing the following interactions:

- On August 18th 2020 I reported my disability to my direct supervisor Julie Schmelzer, at the time she afforded me a medical accommodation and forwarded that information to HR for inclusion in my personnel file.

- On September 10th 2020 Commissioner Court Boice made discriminatory and harassing comments in regards to my medical accommodation. I informed County Council John Huttl as well as my Supervisor County Director Julie Schmelzer, she confirmed my medical accommodation is in fact approved and on record. County Council stated he would follow up with Commissioner Boice.

- Since reporting the discriminatory behavior I have been the subject of retaliation and continued harassment. Commissioner Boice has gone so far as the attempt to reassign me to complete janitorial services for the county, clearly retaliating against me by attempting to assign me "less than desirable working condition". The interim County Director, Brad Rueckert correctly responded to Commissioner Boice by stating this is an inappropriate use of a Departments heads time and is not at all responsibility of my department or personal job description.

- On November 5th 2020 I had an appointment with my doctor to discuss my ongoing medical issues. Upon returning to work I sought out Mr. Rueckert to discuss the outcome of my medical appointment. Before I could meet with Mr. Rueckert, Commissioner Boice sought me out and began accosting and harassing me about my medical accommodation. He did this in an attempt to humiliate and demean me in front of my coworkers. He demanded that I provide him personally with medical documentation in direct violation of ADA laws. He was aggressive, demeaning, humiliating, and specifically discriminating against me for my medical disabilities.

There have been many witnesses to multiple inappropriate interactions. This confrontation like many others was initiated by Commissioner Boice with the sole purpose of harassing me about my protected status. There is an established and escalating pattern of discrimination/harassment/retaliation against myself that continues to go unabated.

These interactions are a blatant violation of the Curry County Personnel Policy Article 26 (Discrimination Complaint), and 27 (Protected Class Harassment) and all other applicable Articles.

Article 27 (I)(2) states that I will be informed of the results of investigation and sanctions imposed. I will be awaiting this outcome.

Although the Personnel Policy does not outline sanctions of elected officials, it does state that this policy is tertiary to any law or negotiated contact. As the

PAGE 5 – COMPLAINT

    Personnel Rules provide no reprieve for discrimination from a Commissioner as an elected official, if the outcome of this investigation substantiates my allegations, I wish to invoke Disciplinary action as outlined in in the Oregon State DAS Discrimination and Harassment free workplace specific to an elected official/commissioner.

  20. DeRock's commissioner liaison, Susan Gold, was always very supportive of DeRock in his position and opposed Commissioner Boice's behavior towards DeRock. In response, Boice actively campaigned against her and financially backed the candidate, John Herzog, opposing her. Commissioner Gold lost on reelection and Commissioner Herzog, supported by Boice, won her seat.

  21. Additionally, Boice became aware that DeRock's wife, Emma DeRock, was running against his longtime friend Renee Kolen for County Clerk. This upset him and his harassment and retaliation was due in part based on DeRock's marital status.

  22. In November 2020, Boice took actions that exceeded his authority as county commissioner regarding the contract for the camp hosts at Boice-Cope Park. Ms. Schmelzer notified him that he did not have authority to do so and it was the law. His response was: "Can't wait - haven't had 'hand cuffs' on since my Dad educated me when I was 17 ... @" and "I'm way beyond laughing - They are not to be moved back and if causes me to be arrested - so be it ! ! ! !"

  23. On November 16, 2020, Commissioner Boice wrote an email to County Council directing him not to tell DeRock about issues at the park.

  24. On November 18, 2020, Commissioner Court Boice was censured by Chairman Christopher Paasch and outgoing Commissioner Susan Gold. A censure is the strongest disciplinary action showing disapproval by a board short of filing a lawsuit. The censure was prompted by an incident over the previous weekend at Boice Cope County Park because of an issue with the water. DeRock complained to commissioners that DeRock had not been promptly informed of the problem, and that Commissioner Boice had contracted for services without my knowledge. DeRock did not learn of the problem until about 9:45 a.m. Monday morning.

25. During the board meeting, Paasch asked Boice whether he had contacted the parks coordinator immediately upon learning of the water problem. "No, I wasn't comfortable doing that," Boice replied. DeRock stated, "had I been informed Sunday when it happened, as I'm supposed to be informed of things that happen at the park I deal with on a regular basis, I would have been out there Sunday, not over the phone and not contracting people to show up on Monday, I would have been out there Sunday dealing with it." DeRock continued that "it's tying my hands and not allowing me to do my job when information is withheld from me purposefully."

26. The censure specifies that if a lawsuit arises for any of Boice's actions, he would be responsible for his own legal defense. The censure specified incidents for his actions involving county parks and also mentioned unspecified issues over OSHA rules.

27. On December 16, 2020, DeRock received a performance review from in which DeRock was rated "successful" or better in all areas. The review stated: "Anthony 'Tony' has done an exceptional job with the parks. He has taken a dilapidated park which has been ignored and cleaned it up, made repairs, planned for improvements, and got the public to want to start using the park again. His revenues have exceeded prior years, and that was even in the midst of a pandemic. He has had struggles with camp hosts, and has encountered political obstacles this year which has eroded the time he had to dedicate to the parks, but has solid plans to improve the two parks he has. He needs to now work on his Parks Plan and now he is going to expand the park system." DeRock received an annual wage step increase at this time. My salary was $53,650.00.

28. On December 16, 2020, Boice and the board voted to make Director of Operations Brad Rueckert's appointment permanent. Mr. Rueckert was DeRock's supervisor going forward. As the director of operations, Rueckert oversaw all of the departments in the county, including economic development, parks, public health and roads, with a special focus on finance. Additionally, he served as the go-between for the commissioners and the leaders of each department.

29. On January 4, 2021, Commissioner Herzog made his first motion as a new commissioner. He moved to remove Commissioner Boice's censure in a two to one vote. Commissioner Boice was allowed to vote for the removal of his own censure.

30. In January 2021, Boice attempted to remove Director of Operations Brad Rueckert from his position by eliminating it. Economic Development Coordinator Summer Matteson spoke at the hearing and told commissioners she took an hour of vacation time to address them Wednesday. "I assure you, there would be more like me here if they weren't in fear of losing their jobs or retaliation," Matteson said. "Security in the director of operations provides continuity that county employees need to be successful. With the election of a commissioner, there is no required management experience, professional development or administrative skillset. Keeping a liaison between the board of commissioners and departments provides needed consistency and the development of system needs."

31. Chet Brewer, who works in facilities maintenance for the county, agreed with much that Matteson said and also reported the toxic working conditions. "I come to you with some concerns," he said. "I really feel I've seen a big turn in the last six months with staff and management. I'm not actually sure of a way to fix or try and remedy these problems. We have employees, including myself, who are scared to talk, are scared to bring things to the table, are scared to discuss their feelings and how we can work together as a team. I'm asking you guys to help figure out a plan to fix that. It's getting to the point where it's medically impacting people."

32. Erin Johnson, a business owner who is very active in Curry County, also spoke out against the way employees are being treated. "They're all disheartened. The behaviors that are happening are unprofessional," she said. "I don't see how any of you want to get up and go to work every day. I really implore you, this board, to start working together to make this a better place, to make a better work environment for the betterment of the county. This county is not moving forward, it's moving backward."

33. Commissioner Paasch said most of the complaints he has heard have been regarding Boice and his relationship with Herzog. "I feel a lot of people's pain here because a lot

of people have called me the last few weeks with a lot of concerns," Paasch said. "I don't mean this disrespectfully against [Commissioner Herzog], but I think it's a transparency of where we are. They have great concerns that Mr. Boice donated a lot of money to [Commissioner Herzog's] campaign and now you're on the board. These are the concerns I'm getting from people."

34. Paasch added that when Julie Schmeltzer, the first director of operations, left last year she pointed the finger at Boice, as well. "She left here in July, and in her parting letter, she said she could no longer be part of a county where things were done improperly, and she felt some things were illegal," Paasch said. "A large part of what is happening is our employees being micromanaged, being told how to do their jobs when they already know their jobs."

35. In March 2021, Boice again attempted to remove Director of Operations Brad Rueckert from that position. Rueckert complained that "I feel threatened." "I feel threatened that my job won't be here tomorrow. This should not continue to happen. It's not fair to me, it's not fair to my family, it's not fair to the citizens."

36. In April 2021, Commissioner Chris Paasch formally requested Boice step down from the chair because he said Boice "got out of [his] lane and [did] something [he] shouldn't have," on more than one occasion. "I don't know why, but you feel like being chair gives you additional power in this county, and it does not." Paasch alleged Boice told local businesses they could wait to pay county permit fees. He also accused him of using his chair position to grab power and undermine Director of Operations Brad Rueckert. Boice admitted he did tell a business owner they could wait to pay fees.

37. Paasch made a motion to remove Boice from the chair. However, before a vote could be made, Vice Chair John Herzog stepped in and tabled the discussion for a behind closed doors meeting Friday. It appears a compromise was achieved during the executive session Friday, as Paasch did not renew his motion to remove Boice.

38. On June 9, 2021, DeRock injured his back while working at Lobster Creek Campground. DeRock was moving a large table and felt a sensation in his spine that caused him

PAGE 9 – COMPLAINT

immediate pain. Lobster Creek does not have cellphone reception because it is very remote and no one was available to report his injury to by the time DeRock got back to the office that day.

39. On June 10, 2021, DeRock notified his employer that DeRock had hurt himself while working the previous day and was unable to walk and was in a lot of pain. DeRock filed a workers compensation claim.

40. On June 10, 2021, DeRock was seen at Gold Beach General Hospital, the treating doctor ordered a CT, noted acute lumbar back strain, and took DeRock off work. DeRock signed an 827 form for DeRock's on-the-job injury.

41. On June 12, 2021, DeRock's wife completed a SAIF workers compensation claim for DeRock.

42. DeRock began seeing Dr. Reginald Williams at North Bend Medical Center in Gold Beach. He ordered an MRI, pain management medication, physical therapy, and a surgical consultation, as well as restricting DeRock's work and job duties.

43. DeRock received one temporary disability check from SAIF for June 13-20, 2021. After those dates, DeRock worked modified duty.

44. DeRock was able to hire on summer crew that DeRock had trained the year before. They were able to help manage the physical requirements with DeRock's instruction. DeRock took his job very seriously and have great pride in the parks that DeRock was charged to care for. Even while injured DeRock wanted the visitors and patrons of the park to have the vacation they deserved. DeRock was able to manage most needs from home by directing his park hosts and summer crew and maintain clear contact with all necessary parties. Even with his injuries and inability to perform the physical tasks, it was still the most lucrative year that Curry County Parks had ever had.

45. On July 14, 2021, the board voted 2-1 (Boice and Herzog – Paasch) to eliminate the director of operations position. Brad Rueckert, who was the director of operations, was transferred to a new role as the director of finance. DeRock began reporting to Mr. Herzog after this.

46. On July 16, 2021, DeRock was taken off work by his doctor, Reginald Williams, MD.

47. On August 5, 2021, DeRock met with an Independent Medical Examiner per SAIF's request.

48. On August 9, 2021, DeRock received notice from SAIF that his claim, claim # 8594959D, was accepted for "lumbar strain".

49. On August 25, 2021, physical therapy was approved, and treatment began 2 times per week. SAIF was responsible for obtaining information from DeRock's doctors regarding his restrictions and coordinating those restrictions with Curry County.

50. On September 28, 2021, DeRock was seen by a spinal surgeon, Timothy D. Uschold, M.D., at Southern Oregon Neurosurgical & Spine Associates, P.C. (SONSA) he recommended the most conservative treatment option first, which was continued physical therapy and a series of injection to relieve pain and be reevaluated. DeRock was referred to Kaitlyn Forell, PA for physical therapy. Timothy D. Uschold, M.D. requested an epidural steroid injection.

51. On October 1, 2021, Commissioner John Herzog sent DeRock a letter asking about his status. Herzog's letter stated that DeRock should keep a daily log of all my activities. No other county employee was required to keep a daily log of all activities, and this was discrimination and retaliation.

52. DeRock and Herzog arranged to have a weekly call on Mondays after lunch to verbally go through the list so that he could ask questions about issues. We did so and he never reported any issues to me about my job performance or other concerns he had about how DeRock was completing my job duties.

53. On November 2, 2021, Reginald Williams, MD continued to restrict DeRock from returning to full duty due to my on-the-job injury. Kaitlyn Forell, PA-C wrote a letter recommending that work capacity be evaluated and determined by occupational health because

PAGE 11 – COMPLAINT

Southern Oregon Neurosurgical & Spine Associates, P.C. does not determine these restrictions outside of a post-operative recovery period. This information was provided to Curry County.

54. Medical notes and other records were submitted regularly to Curry County or SAIF as required. They also had releases to speak with DeRock's doctors and were in frequent contact with SAIF and were able to get any required updates from SAIF if needed.

55. On November 2, 2021, DeRock received via email a letter summoning him to the Board of Commissioners meeting November 3, 2021 to plead for his job as they were considering terminating his employment "because you are not currently able to perform the duties of your position, and there is no other employee in your department that can step in to take over your tasks: the Board must consider whether it is in the best interest of the county that your employment continues".

56. On November 3, 2021, DeRock appeared before the board (Commissioners Court Boice, John Herzog, and Christopher Paasch in addition to County Council Anthony Pope) and gave a list of all the improvements DeRock had made to the parks since my hiring, DeRock listed off revenue and tried to ask why DeRock was being fired. DeRock was given no reason and there was no mention of any specific duties DeRock had failed in.

57. On November 4, 2021, DeRock received a letter from Commissioner John Herzog stating DeRock was terminated and directed DeRock to set up a time to gather his belongings and turn in his County property.

## FIRST CLAIM FOR RELIEF

### Disability Claims – Against Defendant Curry County

### Count 1

### (Title I of the Americans with Disabilities Act - Discrimination)

58. Plaintiff realleges all relevant paragraphs.

59. At all times material, defendant was an employer for the purpose of, and subject to, the Americans with Disabilities Act (ADA).

60. Plaintiff has an impairment, which substantially limits one or more major life activities, has a history and/or record of such impairment, and/or was regarded by defendant as having such impairment.

61. After Plaintiff disclosed Plaintiff's disability to defendant, defendant began to discriminate against Plaintiff as alleged above.

62. Defendant failed to engage in the interactive process with Plaintiff.

63. Plaintiff requested reasonable accommodations from defendant.

64. At all relevant times, Plaintiff was able to perform the essential functions of Plaintiff's position, with or without reasonable accommodation.

65. Defendant discriminated against Plaintiff by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment and not placing Plaintiff on disability leave if defendant determined Plaintiff's disability prohibited him from performing his job duties.

66. Defendant conduct violated 42 U.S.C. § 12112.

67. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## Count 2

### (Title I of the Americans with Disabilities Act - Retaliation)

68. Plaintiff realleges all relevant paragraphs.

69. Defendant retaliated against Plaintiff for pursuing Plaintiff's rights in accordance with the ADA. Such actions by defendant are in violation of the Americans with Disabilities Act.

70. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## Count 3

### (ORS 659A.103 et seq. - Oregon Rehabilitation Act)

71. Plaintiff realleges all relevant paragraphs.

72. Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

73. Defendant is an 'employer' as defined at ORS 659A.106.

74. After Plaintiff disclosed Plaintiff's disability to defendant, defendant began to discriminate against Plaintiff as alleged above.

75. Defendant failed to engage in the interactive process with Plaintiff.

76. Plaintiff requested reasonable accommodations from defendant.

77. At all relevant times, Plaintiff was able to perform the essential functions of Plaintiff's position, with or without reasonable accommodation.

78. Defendant discriminated against Plaintiff by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment and not placing Plaintiff on disability leave if defendant determined Plaintiff's disability prohibited him from performing his job duties.

79. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## SECOND CLAIM FOR RELIEF

### (Family and Medical Leave Act of 1993 - 29 U.S.C. § 2601 et seq.)

80. Plaintiff realleges all relevant paragraphs.

81. Defendant is an 'employer' within the meaning of 29 U.S.C. § 2611(4).

82. Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks in 2020 or 2021.

83. At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

84. At all times in 2021, defendant employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for defendant.

85. Plaintiff was employed by defendant for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

86. Plaintiff was employed by defendant for more than 12 months prior to commencing leave in 2021.

87. At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

88. Plaintiff took medical leave protected by the Family Medical Leave Act (FMLA) and was entitled to additional medical leave.

89. At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

90. Defendant interfered, discriminated and retaliated against Plaintiff for engaging in the protected activity of taking leave under FMLA.

91. Defendant interfered, discriminated and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment and not placing Plaintiff on medical leave if defendant determined Plaintiff's serious health condition prohibited him from performing his job duties.

92. Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

93. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## THIRD CLAIM FOR RELIEF

### Count 1

**(ORS Chapter 659A.040 - Injured Worker Discrimination and Retaliation)**

94. Plaintiff realleges all relevant paragraphs.

95. Defendant discriminated and retaliated against Plaintiff by changing the terms and conditions of Plaintiff's employment. Defendant's actions violated ORS 659A.040, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

96. Defendant's unlawful employment actions were taken against Plaintiff in substantial part because of one or more of the following:

    (A)    Plaintiff reported an on-the-job injury;

  (B)  Plaintiff applied for benefits, invoked or utilized the procedures provided in ORS Chapter 656; and

  (C)  Plaintiff was on light duty for Plaintiff's on-the-job injury as specified by Plaintiff's surgeon and physicians.

97. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**Count 2**

**(ORS Chapter 659A.046 – Failure to reemploy)**

98. Plaintiff realleges all relevant paragraphs.

99. Plaintiff's physician released Plaintiff to return to work with restrictions.

100. Defendant had work available that complied with the work restrictions imposed by Plaintiff's physician.

101. In violation of ORS 659A.046, Defendant failed to reemploy Plaintiff to an available and suitable position. Defendant's failure to reemploy Plaintiff is an unlawful employment practice, resulting in Plaintiff's damages.

102. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**FOURTH CLAIM FOR RELIEF**

**(ORS 659A.199 and ORS 659A.203 – Whistleblower)**

103. Plaintiff realleges all relevant paragraphs.

104. Plaintiff reported to Defendant conduct that Plaintiff believed was evidence of a violation of state or federal law, rule, or regulation.

105. Defendant discriminated and retaliated against Plaintiff because of the report made by Plaintiff. Defendant's actions violated ORS 659A.199 and ORS 659A.203, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

106. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## FIFTH CLAIM FOR RELIEF

### (Wrongful Termination)

107. Plaintiff realleges all relevant paragraphs.

108. Defendant's conduct, as alleged, was in retaliation for Plaintiff assertion of Plaintiff's FMLA rights and as such constitutes a wrongful discharge under state common law.

109. Plaintiff's remedies under federal statutory law do not constitute a complete remedy for the damage Defendant has inflicted.

110. As a result of defendant's conduct, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

## SIXTH CLAIM FOR RELIEF

### (ORS 659A.030(1)(f) and ORS 659A.030(1)(g))

### (Against Defendant Court Boice)

111. Plaintiff realleges all relevant paragraphs.

112. Defendant Boice aided and abetted defendant County's discrimination and retaliation as alleged above and by having Plaintiff's employment terminated. Defendant Boice's conduct was an unlawful employment practice in violation of ORS 659A.030(1)(f) and ORS 659A.030(1)(g).

113. Plaintiff is entitled to an order declaring Defendant Boice's conduct to be an unlawful employment action and in violation of ORS 659A.030. The Court should issue an injunction prohibiting Defendant Boice from future violations of these statues.

114. Plaintiff is entitled to damages, attorneys' fees, costs, and disbursement as set forth above.

## DAMAGES

115. Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendants violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

116.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

117.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

118.     Plaintiff is entitled to liquidated damages.

119.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

120.     Pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), ORS 20.107, and ORS 659A.885, Plaintiff is entitled to an award of attorney's fees, expert witness fees and costs incurred herein.

121.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

**PRAYER FOR RELIEF**

Plaintiff prays for the following judgment against defendant:

1.     A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

2.     A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

3.     Equitable relief, including but not limited to, reinstatement if Plaintiff so chooses;

4.     Liquidated damages;

5.     Plaintiff's costs and disbursements incurred herein;

6.     Plaintiff's attorney fees; and

7.     For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: December 14, 2022

                                        **Law Offices of Daniel Snyder**

                                        *s/ Carl Post*
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Attorneys for Plaintiff